323-0072 Jamarion Tripp, a minor, by his mother, Shavonna Simpson, appellant, v. Board of Education of Hinsdale Township High School District 86, Appalooke. Thank you. Good morning. Morning. Morning. Morning. Let's see. Mr. Naputzle? Is that correct? Yes. Nebusel. Nebusel? Yes. Okay. Could you, are you ready to start? I am. Okay. You can proceed. May it please the court. Good morning. My name is Nick Nebusel and I represent the plaintiff appellant Jamarion Tripp in this matter. I think an important starting point for us here is to recognize that notice is what distinguishes negligence from willful and wanton conduct. Since the clarification in ZARCO and the cases that have followed, it is clear that under Illinois law that willful and wanton conduct can be merely reckless. This definition and understanding is incorporated into the statutory definition of the Tort Immunity Act. Conscious disregard can be understood as actual notice. Utter indifference can be understood as constructive notice. With that understanding, evidence or allegations that a defendant had actual constructive notice of the specific risk that caused injury are always sufficient to find a question of fact regarding willful and wanton conduct. In the leading example from our brief, Murray, the USGF rules provided notice of the risk of spinal injury. It didn't matter that these rules did not have the force of law or if the instructor was required by his employer or someone else to follow these rules. Rather, he had actual constructive notice of the rules and their warnings because they were the basic minimum safety standards for the class he was teaching and the activity that he was teaching. We see the same thing at play in Torres, where the policy prohibiting hanging objects from poles provided notice of the risk that they could not support someone's weight. Again, the defendant had actual notice of the specific risk that caused injury because this policy prohibited the conduct that the defendant engaged in. Again, we see the same thing in American National Bank. That's the case where the Supreme Court case where the paramedics did not try the patient's door to see if it was unlocked and the patient died inside. The paramedics training and standards in that case provided notice of the risk of not checking to see if a door was unlocked under the try before you pry policy. Same thing in Benhart. The fact that the non-slip strips existed in the wave pool prior to their removal provided notice of the slipping risk. Therefore, the defendant could be found to be willful and wanton when the plaintiff was injured because of that specific risk slipping on the bottom of the pool. We see the same importance of notice in Landers. That's the case where the student was injured doing a backward somersault. At trial, the instructor admitted that she knew a student with insufficient arm strength could land on their neck with their entire weight. Again, in Manuel, the plaintiff alleged that the defendant's employees knew the stairs were slippery. Therefore, the defendant could be. There's a question of fact regarding willful and wanton conduct because the patient, the plaintiff, slipped on the slippery stairs. Finally, in Ozil, the court noted that the fact that the defendant endeavored to keep objects at least two feet away from the curtain show that the employees knew the tennis players would run into the curtain. Again, we have this notice that tennis players would run beyond the boundary, would run into the curtain, and therefore leaving the ladder right on the other side of the curtain could be found to be willful and wanton conduct. On the other hand, we have cases like Barr where the court found there was no evidence the instructor had notice of the specific risk that required students to wear goggles. In evaluating these cases, I think it's very important for this panel to recognize that when we're talking about willful and wanton conduct and the sufficiency of allegations or the sufficiency of evidence, we're talking about the breach element, not the duty element. Duty is a question of law, whereas breach is almost always a question of fact. I think Barr is instructive in this regard where the Supreme Court notes that it can decide the issue is a question of law after discovery, and in that case after trial had occurred because it is all the same evidence that the finder of fact ultimately had. That is not the case on 2615 motions where no discovery has been completed or in this case where meaningful opportunity to conduct discovery was not provided. That's legally significant because a 2615 can only be granted when no set of facts could be proven under the allegations made. I think this court needs to be particularly wary of applying post-judgment cases or summary judgment cases to cases involving the pleadings like this one because the question is not whether this panel believes that the conduct was willful and wanton, rather it's whether a question of fact was created. When we're looking at these willful and wanton cases, I think there's three broad categories. Sometimes conduct is so severe that it's willful and wanton as a matter of law. Sometimes conduct is not willful and wanton as a matter of law, but between those two poles, there's a broad class of cases where it's a question of fact and up for the finder of fact to determine if the conduct was willful and wanton. Here, beginning with the counts that are at issue, count four alleges willful and wanton improper supervision and improperly and sufficiently alleges willful and wanton improper supervision. Here, the USA Gymnastics Rules provided notice of the specific risks of over-rotation and falling backwards. I think it's really important to stress that the United States Gymnastics Federation is now known as USA Gymnastics. These are the same exact rules that were at issue in Murray. This case sits on all fours with Murray. Turning to the specific allegations of our complaint, if you look at paragraphs 44, 54, 58, 59, 60, and 61, which are reproduced on pages 15 and 16 of our brief, we specifically allege actual knowledge of the specific risk that Ms. Trich had. She knew the reason that USA Gymnastics Rules existed. She knew that they were to guard against the specific risks of over-rotation and falling backwards. We allege that falling backwards into an unpadded brick wall poses a significant risk of harm to plaintiffs. Based on Murray, we have sufficiently alleged willful and wanton conduct. I also think it's important to note that our allegations allege not only that USA Gymnastics Rules as the source of that knowledge, but also that Ms. Trich had knowledge of these specific risks because of her training and experience coaching and as a gymnast. This is the same basis of knowledge that was held sufficient in American National Bank by the Supreme Court in that paramedic case, where the paramedics were alleged to have disregarded the standard that applied to all cases and their training. Here and in American National Bank and in Murray, the issue is, did Trich have knowledge or notice that her warm-up activity was dangerous? And she did because she knew of these rules, knew of the specific risks, and instructed her students to do it anyways. That is sufficient to create a question of fact regarding willful and wanton conduct. And I think that in addressing some of the defendants' arguments here that, oh, well, these USA Gymnastics Rules don't have the force of law. She wasn't required to follow them in a gymnastics class. Well, that's not the issue. We're not looking for a 6-0-1 jury instruction or trying to find willful and wanton conduct per se. Rather, these rules are the reasons that she had noticed that her conduct was dangerous, which is that central element that we're looking at in these willful and wanton cases. Turning now to Count 2, that count alleges willful and wanton failure to provide safety equipment and failure to fix a dangerous condition. The school district here built a spring-loaded floor within inches of an unpadded brick wall. I think it's important to note here that defendant has forfeited any arguments as to the factual sufficiency of that count because no such argument is made in their brief. Forfeiture aside, the USA Gymnastics Rules require the wall to be padded. That's paragraph 22 of that complaint. Or to have at least six feet of clearance beyond the tumbling surface in paragraph 27. The district should have known of these rules because the USA Gymnastics Rules are the basic minimum safety standards that apply to all tumbling activities. This was a tumbling room and a tumbling surface. Murray also involved insufficient padding based on the same set of rules. Actual knowledge in that count is alleged in paragraphs 55 through 57. I think even if we put the rules aside, an unpadded brick wall next to a spring-loaded tumbling surface used by students who often tumble towards that wall is far more dangerous than the tripping hazards that were at issue in Moolman, Palmer, and Ozel. In all of those cases, in Moolman and Palmer, the defendant was found to have committed willful and wrong conduct. It would have been a question of fact, rather, based on knowledge of a dangerous condition and the failure to fix that dangerous condition. Here, there's really no excuse for the district not having placed a pad on that brick wall right next to the tumbling surface that was spring-loaded. Moving on to count three, that was a prior version of our willful and wrong and proper supervision count. The defendant has also forfeited any argument that that count was not sufficiently pled because it's not raised in their brief. With respect to that count, even if the court does not think willful and wrong was sufficiently pled, it is well established that a complaint cannot be dismissed for mere surplusage. I apologize, I think I mispronounced that word. And that count unquestionably alleges negligence. Defendants' immunity and supervision immunity cannot be raised by a 2615 motion, and we were not required to anticipatorily plead around their affirmative defenses. I think where the rubber really meets the road on this issue is with respect to count one, which was improperly dismissed pursuant to 2619. I think with respect to that count, it's helpful to zoom out a moment before we dive into the details. And I've never read a case, and I don't believe there is a case, where actual evidence of willful and wanton conduct was presented to the court before judgment and judgment was entered anyways. Here, defendant does not contest that Wormley and Mitchell's affidavits create a question of fact regarding willful and wanton conduct. So however we get there, Illinois has a strong public policy on cases being decided on their merits. Whether we weren't required to plead willful and wanton conduct in the first instance, or we should have just been simply granted leave to conform the pleadings to the proof, which can occur even after judgment. Because there was actual evidence of willful and wanton misconduct, dismissal of that count must be reversed. Diving into the weeds a little bit more though, a 2619 motion differs from a 2615 motion in that the pleadings are not at issue. A 2619 motion requires the court to weigh the evidence, and defendant's 3-106 affirmative defense raised two issues. Whether there was non-incidental recreational use of the property, and whether the defendant was willful and wanton, the plain language of section 2619 allows the plaintiff to provide evidence in response to that motion. There is no rule that requires us to rely solely on our pleadings. There is no rule that prevented us from attaching those affidavits to create a question of fact. And there's been no evidence produced by the defendant to rebut the statements contained in those affidavits. And so therefore there is a question of fact regarding willful and wanton conduct, and defendant's 2619 motion was required to be, or should have been dismissed. When we look at whether or not the plaintiff was required to plead willful and wanton conduct in the first instance, you know, obviously I don't think that the plaintiff ever has an obligation to plead around an affirmative defense. To the extent that there is sometimes that a plaintiff does have such an obligation, the justification becomes far weaker with respect to this 3-106 defense, because it does not arise from the facts of the accident itself. The plaintiff was engaged in a mandatory physical education class. He was not conducting recreational activity. So defendant's affirmative defense relies on truly affirmative facts, facts regarding conduct, you know, classes, activities that took place at times other than the accident. There's really no basis to state that we had the obligation to plead, anticipatory plead around that affirmative defense. And the evidence here established willful and wanton conduct with those affidavits. I do see that I'm coming up to the end of my time. Is there any questions that the panel may have for me that I may answer? Are there any questions? I have none. I don't have any. Okay, there are none. Okay, with my very last moments, I do just want to note to the extent that the affidavits do not create a question of facts regarding willful and wanton conduct, the defendant placed that question at issue with their motion. We had to be allowed discovery on that issue so that we could properly respond. Did you file a 191? We did. We filed a 191B motion and that motion was granted in very limited part. The court allowed us discovery on the recreational use issue, did not allow us any discovery sought on whether the conduct was willful and wanton. The trial court improperly limited us to rebutting the evidence produced by defendant instead of allowing us to discover the evidence that would have obviated the grounds for defect as allowed in responding to 2619 motion. Does anyone else have any questions for me? There are none. All right. Thank you all. Thank you. Mr. McEwen. Thank you, and may it please the court. For the record, my name is Kevin McEwen and I represent defendant appellee, the Board of Education of Hinsdale Township School District 86. This matter has obviously been extensively brief, so I'm going to try and focus my time on addressing some of the points made by counsel and also highlighting a few key issues. And of course, answering any questions that you may have. The trial court properly dismissed plaintiff's claims of willful and wanton conduct for failure to state a cause of action. Illinois is a fact pleading jurisdiction and a complaint must allege facts, not conclusions to survive a 2615 motion to dismiss. The case law is clear in Illinois that to state a cause of action for willful and wanton conduct, a plaintiff must allege specific facts supporting the inference that either defendant was aware of prior similar injuries. Or that plaintiff was engaged in an obviously dangerous activity and that defendant knew that that activity posed a high probability of serious physical harm. First, addressing prior similar injuries, there is no allegation in the Second Amendment complaint that the district or church were aware of prior injuries sustained by students performing a basic warm up roundup maneuver in gym class, which is what is that issue here, or that the district or church were aware of any prior injuries sustained by students running into an unpadded wall in the tumbling room in gymnastics class. Nor can there be. Plaintiff received discovery on this issue. The board agreed to answer plaintiff's interrogatory, seeking evidence of any prior injuries sustained by students striking the brick wall in the tumbling case, and the board disclosed that no such prior injuries exist. And so consequently, the complaint fails to allege sufficient facts to meet the standard set in Floyd of prior similar injuries. And so thus, we are, we must then assess whether plaintiff was engaged in an obviously dangerous activity, and that defendant knew that that activity posed a high probability of serious physical harm. And that standard comes from the Illinois Supreme Court in Barr versus Cunningham. There it held that in the absence of evidence that a defendant had knowledge of prior similar injuries, and I quote, a plaintiff must establish that at a minimum the plaintiff was engaged in an obviously dangerous activity, or the activity is generally associated with the risk of serious injury. Again, the activity at issue here. It was a basic gymnastics class involving a basic warm up round off maneuver which is akin to a cartwheel. This is not hazardous as a matter of law, and we can look to the grandowski case that cited in our brief for this proposition. There it affirmed a motion to dismiss holding that in a basic gymnastics class involving a student's execution of a flip flop was not a hazardous activity, a flip flop is essentially the same as a round off with the exception that the you're executing basically a backflip but using your hands here around off is essentially a cartwheel. So we have a basic gymnastics class, performing a very similar type of maneuver arguably more dangerous and grandowski, and still the court there held that that was not an obviously are inherently dangerous activity. What about the direction to to perform it in the direction of a brick, an unpadded brick wall. I'm sorry, makes it isn't that what potentially makes it inherently dangerous. Your Honor. There have been other cases that we cited in our brief involving involving athletics perform near walls. I cite to the Mathias case. In that case, students were playing a game called scramble ball which forced them to run full speed into an unpadded wall. There the appellate court hold held that affirmed emotion to dismiss holding that that was not an obviously are inherently dangerous activity. I would point to the fact that the complaint alleges that this warm up maneuver was done before every single class that there were spotters presence. While the maneuver was being done to protect the students while they were doing it. And that, again, at no point was there ever any indication of an injury, let alone a serious injury. Again, I would also point to the fact that the Illinois Supreme Court has held that so long as public, public school employees exercise some precautions, even if insufficient, they cannot be guilty of willful and wanton conduct. And again that comes from the Barber's Cunningham case. And that cites to a different Supreme Court case, the Lynch first Board of Education case here the Second Amendment complaint concedes that the district and Trish took many precautions to protect against injury, we have padded spring loaded floors. That's paragraph seven and eight of the complaint we have instruction and direction regarding the performance of the basic maneuvers that's paragraphs 10 and 12, and we have instruction to students regarding spotting. That's paragraph 67 to 68. There's no allegation in the Second Amendment complaint that this was the first time that the student perform their maneuver or that he didn't, that he didn't receive any instruction on how to perform the maneuver. In fact, his allegations concede quite the opposite. Some other cases in which that we cite in our brief but that I would just like to highlight, you know, all of these cases that I'm going to list here involve school gymnasium cases. Barber's Cunningham, the Illinois Supreme Court held that school district did not engage in willful and wanton conduct where the teacher failed to provide safety goggles to students playing floor hockey despite knowing that the ball could fly above waist height. The Oza case versus River Grove Board of Education affirmed a motion to dismiss pursuant to 2-615 where students were required to run laps underneath volleyball nets and on an uneven and warped gym floor. Toler versus Plainfield School District. There, a teacher admitted that he was aware that weight classifications existed for extracurricular junior high school wrestling, and that the purpose of the classifications were safety and fair competition. And nevertheless, the teacher divided the class into groups based on height as opposed to weight, which resulted in the plaintiff being required to wrestle another student who weighed approximately 20 to 25 pounds more than he did and the student sustained a serious injury. The Tijerina case. There, a student ran into bleachers while playing a wiffle ball game in a school gymnasium. Those bleachers were alleged to have been within the field of play. And again, the trial court affirmed dismissal of the student's claim for willful and wanton conduct on a motion to dismiss. And then lastly, the Mathias case that I briefly highlighted earlier, which was a game in which students were directed to run into an unpadded wall at full speed, which was known as a safe zone. I think another case that's particularly instructive here when we look at the high probability of serious physical harm is the Leija case. In that case, there were allegations that there was a volleyball net crank that had a tendency to snap back. And there was allegations of knowledge that this volleyball crank had prior difficulties and that it did snap back. Nevertheless, the student was instructed to do that and was seriously injured. There, the court held, again, that the allegations were insufficient to state a claim for willful and wanton conduct. Plaintiff's claims essentially amount to the district being noticed for potential risks. And he tries to get there by saying that Trich had prior experience as a competitive gymnast over a decade ago. And somehow that rises to the fact that she should have been fully aware of USA Gymnastics rules, which don't apply to a physical education class in the first place. The trial court correctly held that that was insufficient to place Trich on extra constructive notice of a high probability of serious physical harm. And for that reason, the trial court ruled correctly. Just real quick, what it's called, this class, whatever, gym class, but it was a introductory tumbling classes, I believe what the allegations are. But you agree that that comes under the gamut of gymnastics. I know counsel, obviously plaintiffs have cited these rules and standards that apply to gymnastics. But you know, I, my daughter didn't like athletic activity of any kind. So she didn't get engaged in any of these things. So I'm naive. But you agree that that tumbling does come over this gamut of gymnastics. I understand it's an introductory tumbling class, but that does come under the gamut of gymnastics. I would agree that some of the maneuvers that that were performed were very basic fundamental gymnastics maneuvers. But again, that this was a not a physical education class that was designed to introduce students to basic tumbling maneuvers. Thanks. Um, you know, I, I would also like to highlight counsel's point concerning motions to just 615 motions to dismiss for failure to state a cause of action for willful and wanton conduct. First and foremost, plaintiff conceded that he needed to plead willful and wanton conduct at the hearing on the motion to dismiss count for a second amended complaint. That's the report of proceedings page 89. And in the record, that's page 453. And I quote, the court said, quote, everyone agrees the Tort Immunity Act applies and as a result willful and wanton conduct must be sufficiently pled correct. Counsel responds, correct. The court then says, Okay, very good. I just want to make sure that's clear that there's no disagreement there. So counsel's already conceded before the trial court that he needs to plead willful and wanton conduct. We also have we cited in our brief and I'll highlight here but a vast array of cases from Illinois appellate courts throughout the state upholding motions to dismiss for failure to allege willful and wanton conduct. We have the Leha case, the Floyd case, Osa, Brooks, Lorank, Oropesa, Orovick, Thurman and Winfrey are all cases where the court upheld motions to dismiss for failure to state a cause of action for willful and wanton conduct, and the trial court was correct in doing so here. Very briefly concerning counts two and three of the complaint that that counsel brought up and incorrectly said that that we waived or forfeited our right to argue those. The court does not have jurisdiction to review a trial courts order dismissing counts of a prior complaint that were dismissed without prejudice. Counts two and three were in plaintiffs first amended complaint. Those were dismissed without prejudice, counsel is granted leave to file an amended complaint. He filed his second amended complaint in his second amended complaint he did not plead counts two and three. He, he pled a new count for that alleged willful and wanton conduct. So it's well settled that dismissals that are entered without prejudice are not final are not final and appealable orders. And that's from the Supreme Court so plaintiff simply doesn't have jurisdiction to appeal accounts that were dismissed without prejudice that he was granted leave to refile and chose not to. I want to transition to having discussed the willful and wanton claims and plaintiff's inability to appeal counts two and three I want to go to the final remaining count which is his claim for count one for ordinary negligence. So this ordinary negligence claim was heard on plaintiff's third amended complaint and following the dismissal of plaintiffs willful and wanton count. At the end of the day, the trial court was asked with answering a single question, whether the gymnastics balcony was intended or permitted to be used for recreational purposes. And that's three dash 106 of the Tort Immunity Act. At the outset, plaintiff concedes in his third amended complaint that the gymnastics balcony located in the school gymnasium is recreational property for the purposes of section three dash 106. So that alone answers the question, he has conceded in his complaint that it is because he alleges that action gymnastics which is a private gymnastic club, use the gymnastics balcony for non compulsory recreational purposes. And in his reply brief what he does is he focuses solely on this incidental use argument, but plaintiff wholly misses the mark on that. At the outset, there is no incidental use exception in the plain language of the statute, but nevertheless he appears to be advancing an argument regarding the frequency of recreational use to construct an incidental use argument. But in reality, incidental use was referenced in dicta by the Illinois Supreme Court in Bob versus Springfield School District 186, but it had nothing to do with frequency of use. Rather, what the court was saying in in dicta is that it wanted to ensure that the state that the statutes intended or permitted language was not interpreted so broadly that three dash 106 applied to anywhere where recreation might occur. So in that case, a student suit. I see that my time is up. Justices, but I would, if I could just conclude very briefly, the incidental use argument, pursuant to the Illinois Supreme Court is not related to frequency of use. And regardless, we have in the record, it's clear that action gymnastics a private gymnastics club use this gym for years on end, and it was not compulsory. So section three dash 106 was proper to bar count one of plaintiff's complaint. And with that, I will rest. Thank you. Are there any questions. I have none. Thank you, Mr McEwen. Mr nephews. So, um, any rebuttal. Yes, thank you. May it please the court. I think that the easiest place to start out here is on counts the jurisdictional argument regarding counts two and three council is simply inaccurate when he says that those counts were not replied and every subsequent complaint. Every single complaint, second amended third amended, and the proposed fourth amended complaint, all repeat and reallege the counts for purposes of preserving them for appeal. You know, that is pretty standard law that that is sufficient. And those cases are cited in our reply brief. Council, can I just ask you this, though, the distinction I think Mr McEwen's making is you replay them so that just means you're spitting them back in there, but they were never just they still today as we sit here. During this argument have never been dismissed with prejudice so he's arguing that this court doesn't have jurisdiction to decide that now whether that means you can go back down and rekindle and say, I'll judge this never was. You know, with prejudice so we didn't get to appeal that issue and argue it so you know here we are back and we're going to take one more shot and I don't know, but his distinction is, as we sit here right now, that's never been dismissed with prejudice is what he said. Good. Well, so I guess just to split the accounts out that improper supervision count, ultimately account for was dismissed with prejudice. When you're given leave to replete and don't you simply stand on the complaint here that court entered judgments and that judgment is what's appealed from it, you know, it's not the case where now we can go back. If this court would affirm judgment, we can't go back and replete the count so I think that that is that that is dispositive is the judgment. So, so you're saying what happened really was he gave you a chance to replete, you chose not to you included in your final complaint and the final judgment did in fact dismiss those counts with prejudice so we do have jurisdiction. Correct. Got it. And so I think turning to the, you know, the thrust of the defendants argument. The main, I think, mistake of both the trial court and the defendant is losing the force through the trees and when we're talking about prior injuries, whether it activity was obviously dangerous. Those are examples of knowledge or examples of notice. So when we're talking about whether an activity was obviously dangerous. We're talking about whether the instructor should have known that they were dangerous and that's constructive knowledge. Here we have actual knowledge allegations that the defendant has not addressed. When the defendant says, well, maybe these rules applied. Maybe Mr. It's new about it. Maybe she did it. Well, no, we say she knew about them in our complaint. We allege that that allegation must be taken as true. If Trish denies that she knows about these rules, you know, file an affidavit and file a motion for summary judgment. For purposes of the 2615 those allegations have to be taken as true and pursuant to Murray her knowledge of those rules the actual knowledge of those rules is sufficient. Notice. We also have actual knowledge through her training and experience this notion that an instructor can simply forget everything that she has learned that made her qualified to be a tumbling instructor in the first place and ignore all of that training experience. That allows her to have this position in the first place is nonsensical. We can't have paramedics that ignore their training and experience as an American National Bank. We can't have tumbling instructors that ignore their training experience. As in this case, and also as in Murray in response justice Peterson to your question about the class at issue. I do want to highlight. This was an introductory tumbling class. And so is the class at issue in Murray. We're talking about the same type of class. In terms of I see I'm almost at a time just taller Tiana and Leah and all of those cases the courts noted that the there was no evidence or allegation that the defendant had defendant had knowledge of the specific risk and taller. It wasn't the weight classes that caused the injury. It was that the student performed an illegal wrestling maneuver that had nothing to do with the weight class rule. Here the difference is that the rules existed specifically to prevent this type of injury, you don't tumble towards walls because you're going to fall into it, hit your head and suffer traumatic brain injury. Miss churches alleged to have known those rules knew the reason they exist, known the specific risk of over rotation, known the specific risk of falling backwards, and yet told her students to do it anyways. Under any definition that is a conscious disregard of a known risk. See, I'm very close to anyone on the panel have any additional questions that I may answer. Are there any questions. I don't have any. Okay, thank you. Are you finished. I am. Thank you. All right. Thank you. We thank both of you for your arguments this morning. We'll take this matter under advisement and we'll issue a written decision as quickly as possible.